**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

MIGUEL MELENDEZ,

                          Plaintiff,

      v.                                            No. 09-CV-231
                                                            (GTS/DRH)

DR. SERGIO, NYSDOCS Dentist, Mid-State Correctional Facility[1]; DR. R. FALKNER, NYSDOCS Dentist, Lakeview Shock Incarceration Facility; DR. T. WHITE, NYSDOCS Dentist, Mohawk Correctional Facility; DR. A. MAJEED, NYSDOCS Dentist, Riverview Correctional Facility; DR. A. ROUBIN, NYSDOCS Dentist, Mid-State Correctional Facility; and NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES,

                        Defendants.

---

**APPEARANCES:**                           **OF COUNSEL:**

MIGUEL MELENDEZ
Plaintiff Pro Se
07-A-6708
Elmira Correctional Facility
Post Office Box 500
Elmira, New York 14902

HON. ANDREW M. CUOMO              KRISTA A. ROCK, ESQ.
Attorney General for the                 Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER
U.S. MAGISTRATE JUDGE**

---

[1] Dr. Sorge is incorrectly referred to in the complaint as Dr. Sergio. Defs. Mem. of Law (Dkt. No. 26-1) at 1 n.2. The correct spelling of Dr. Sorge's name will be used herein.

**REPORT-RECOMMENDATION AND ORDER**[2]

Plaintiff pro se Miguel Melendez ("Melendez"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, five DOCS dentists and DOCS, violated his constitutional rights under the Eighth Amendment. Compl. (Dkt. No. 1). Presently pending are defendants' motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Dkt. Nos. 26, 38.[3] Melendez opposes the motion. Dkt. No. 48. Also pending is Melendez's motion to amend the complaint to include supervisory officials as defendants and expand the scope of his requested remedies. Dkt. No. 45. Defendants' oppose the motion to amend. Dkt. No. 46. For the following reasons it is recommended that defendants' motion for judgment on the pleadings be granted and it is ordered that Melendez's motion to amend the complaint be denied.

## I. Background

The facts are related herein in the light most favorable to Melendez as the non-moving party. See subsection II(A) infra.

On January 8, 2008, while incarcerated at Lakeview Shock Incarceration Facility

---

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3] Defendant Dr. Falkner had not been served when the first motion for judgment on the pleadings was filed on the behalf of the other defendants. Defs. Mem. of Law at 1 n.1. However, Dr. Falkner has since been served and joins in the motion of the other defendants. Dkt. No. 38. Accordingly, the motions will be considered together.

("Lakeview")[4], Melendez saw defendant Dr. Falkner for a dental appointment where Dr. Falkner noted that Melendez had an infection in his two front teeth. Each tooth had a "mid length complete horizontal fracture [that was] beyond repair," and that the teeth needed to be extracted. Compl. at 8, 40. Melendez refused the extraction, stating that he wanted to wait until he arrived at his next permanent facility prior to having surgery. Id.

On or about January 24, 2008, Melendez was transferred to Mohawk Correctional Facility ("Mohawk") where his dental chart was reviewed by defendant Dr. White. Compl. at 8. On February 11, 2008, Melendez submitted a dental request for a suspected oral infection. Id. at 39. The following day Melendez was examined by defendant Dr. Roubin, who did not find any swelling and discussed the previously identified fractures with Melendez. Id. at 8. Melendez was instructed to apprise staff of any changes in his dental situation. Id. Melendez requested examinations on February 11 and 14. Id. at 37-38. On February 20, 2008, Melendez was transferred to Mid-State Correctional Facility ("Mid-State"). Id. at 8.

Upon arrival at Mid-State, Melendez requested dental treatment. Compl. at 34, 36. Medical staff examined Melendez on February 29, 2008, observing a raised, red area on Melendez's gums, noting subjective complaints of pain, and preliminarily diagnosing him with an abscess. Id. at 32-33. Melendez was given pain medication and a further examination was scheduled. Id. On March 3, 2008, Melendez was seen by defendant Dr.

---

[4]"The Shock program consists of an intensive regimen of physical activity (both work and exercise), substance abuse counseling, and academic training. Successful completion of the program renders an inmate eligible for early release." Hallett v. New ork State Dep't of Correctional Servs., No. 99Civ. 5853(LTS)(AJP), 2006 WL 803200, at *2 (S.D.N.Y. Apr. 7, 2006).

Sorge, who prescribed him a course of antibiotics. Id. at 8, 30-31.

On March 28, 2008, Melendez began complaining of pain in his gums again. Compl at 13, 27. Medical staff evaluated Melendez on April 7, 2008, noting the prior course of antibiotics Melendez had recently been prescribed, giving him pain medication, and requesting a dental evaluation. Id. at 26. Melendez was again evaluated on April 22, 2008, with treatment notes indicating that his gums were still red and receded. Id. at 24. A request was made for a dental consultation the following day. Id. at 23, 25. On April 28, 2008, Melendez was again evaluated by Dr. Sorge, who again prescribed him an antibiotic treatment and pain medication. Id. 8, 21-22.

Melendez continued to request dental attention for the infection which was getting worse. Compl. at 19-21. On May 12, 2008, Dr. Sorge x-rayed Melendez again and told him that his front teeth required extraction. Id. at 8, 17. The following day, the two teeth were extracted, with further notation indicating that the teeth were not restorable and that extraction was the only remedy available to Melendez. Id. at 9, 18. Melendez was given pain medication after the procedure and was later evaluated by medical staff. Id. at 18.

After the extraction, Melendez continually complained of severe headaches for the following two months which he attributed to his prior dental problems. Compl. at 12-16. Medical staff consistently provided Melendez with either ibuprofen or tylenol to assist in alleviating the pain. Id. Additionally, on May 19 and 21, Melendez continued to complain of gum pain. Id. at 16. Examination by medical staff revealed that the site was healing well, without any signs of infection, and pain medication was again provided. Id. at 16.

On June 23, 2008, Melendez was transferred to Riverview Correctional Facility ("Riverview") where defendant Dr. Majeed reviewed his chart. Compl. at 9. During the

4

month of July, Melendez continued to complain about oral infection and pain.  Id. at 9-11.  In response, Dr. Majeed performed x-rays and oral examinations.  Id. at 9.

Beginning in June of 2008 until approximately October 2008, Melendez filed grievances complaining about the dental treatment he received from January 2008 until May 2008.  Compl. at 41-45.  His grievances were consistently denied.  Id. at 43, 46.  This action followed.

## II. Discussion

Melendez contends that his Eighth Amendment rights were violated when defendants delayed his dental treatment due to language difficulties.[5]  Defendants' contend that they should be granted judgment on Melendez's complaint because (1) the Eleventh Amendment bars suits against DOCS; (2) the injunctive relief he requested against defendants is moot now that he is located at a different correctional facility; (3) Melendez's request for injunctive relief cannot be provided by defendants; (4) Melendez lacks standing to assert claims on behalf of other Spanish-speaking inmates;[6] (5) Melendez's constitutional

---

[5] To the extent that Melendez states his native language, Spanish, impeded his treatment, such contentions are meritless.  First, all medical request slips are bilingual; therefore, Melendez could express his concerns to the dental department without relying on anyone else.  See, e.g., COmpl. at 38.  Additionally, the gravamen of the complaint is not the treatment received, but the timeliness of it.  There is no indication that Melendez could not express to defendant dentists his concerns that his mouth was infected.  The infection was caused, and relieved by, the extraction of two severely fractured teeth.  Thus, such contentions need not be further examined.

[6] Inmates "lack[] standing . . . to assert . . . claims on other inmates' behalf."  Swift v. Tweddell, 582 F. Supp. 2d 437, 449 (W.D.N.Y. 2008); see also Singleton v. Wulff, 428 U.S. 106, 113-14 (1976) (discussing the reasons why federal courts do not allow plaintiffs to assert a third party's constitutional claims on their behalf), Kane v. Johns-Manville Corp., 843 F.2d 636, 643 (2d Cir. 1988) ("Generally, litigants in federal court are barred

5

claims are meritless; and (6) defendants are entitled to qualified immunity.

### 1. Legal Standard[7]

"The standard for granting a Rule 12(c) motion . . . is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted). Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . .

---

from asserting the constitutional . . . rights of others in an effort to obtain relief for injury to themselves.").

[7] Generally, consideration of a motion for judgment on the pleadings "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). As Melendez attached his dental and medical records and grievances to the complaint, they too have been considered.

6

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).

7

**B. Eleventh Amendment**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

"Agencies of the state, such as DOCS, are entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest." Santiago v. New York State Dep't of Corr. Servs., 945 F.2d 25, 28 n.1 (2d Cir. 1991) (citing Halderman, 465 U.S. at 100). Thus, Melendez's claims against DOCS are barred by application of the Eleventh Amendment. Additionally, "this court has held that DOCS is not a 'person' under § 1983 [and c]onsequently, because defendant DOCS is immune from suit under the Eleventh Amendment[,] defendants' motion to dismiss plaintiff's claims against DOCS must be granted." Boddie v. New York State Dep't of Corr. Serv., No. 96-CV-3291 (HB),1997 WL 482036, at *1 (S.D.N.Y. Aug. 20, 1997) (internal citations omitted).

8

Accordingly, defendants' motion for judgment on the pleadings should be granted on this ground as to DOCS.

### C. Mootness

"Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a [live] case or controversy." Butler v. Dolce, No. 03-CV-608 (NPM), 2006 WL 3359311, at *2 (N.D.N.Y. Nov. 16, 2006) (citations and internal quotation marks omitted). In order "[t]o sustain . . . jurisdiction in the present case, it is not enough that a dispute [be] very much alive when suit was filed, or when review was obtained . . . ." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). Thus, "throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis, 494 U.S. at 477 (1990)).

In this case, Melendez seeks injunctive relief against the individual defendants in that "future medical, dental care be given without delay, and as needed [especially to a person who has trouble expressing himself]." Compl. ¶ 7. Melendez was previously incarcerated at Lakeview, Mohawk, Mid-State, and Riverview Correctional Facilities. Melendez's transfer from each of this facilities, now to Elmira Correctional Facility, renders this injunctive relief moot as no individual defendant is capable of providing any of the prospective or injunctive relief sought by Melendez. Therefore, there is no live controversy and the Court no longer has jurisdiction over this claim for relief. See, e.g., Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility").

9

Accordingly defendants' motion on this ground should be granted.

### D. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)). The severity

of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

In this case, defendants do not challenge that Melendez's dental condition constituted a serious medical need. Without deciding that issue, based on the medical evidence submitted, it is clear that defendants were not deliberately indifferent to Melendez's medical needs. First, the record belies any allegations of defendants failing to treat Melendez. In a five-month time period, Melendez was evaluated by dental professionals on six different occasions, x-rays were taken, and two courses of antibiotics and multiple three-day dosages of pain killers were prescribed. Compl. at 8-9. The individual defendants responded to requests by both Melendez and the correctional facility medical departments within days. Such actions are contrary to deliberately failing to treat an inmate.

Second, to the extent that Melendez argues he failed to receive medical treatment after the extraction, such claims are also meritless. The record shows that he was examined by medical staff and given pain relief on approximately ten occasions. Compl. at 9-16.

Additionally, he was seen by dental professionals, given additional x-rays, and examined. Id. at 9. Such examinations revealed that "the extraction was simple and without complications." Id. at 43. The immediate response of both medical staff and the individual defendants and continuous provision of pain medication negates any possibility that defendants were acting in a deliberately indifferent manner.

Third, to the extent that Melendez suggests his medical treatment was delayed, such allegations are untenable. Melendez was evaluated, told his teeth required extraction, and given the option to have the surgery completed at the beginning of January. Compl. at 9. Melendez refused, opting instead to wait until his multiple transfers were complete. Id. Any delay resulting after January 8, 2008 was at the direction of Melendez and, as such, those delays cannot be said to be a result of any of the defendants' actions. Moreover, even if Melendez had not initially refused the extraction, waiting four months for major dental treatment is not an extraordinary delay. Melendez's complaints that he did not receive the dental intervention immediately upon his request are insufficient to sustain an Eighth Amendment claim. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves. The essential test is one of medical necessity and not one simply of desirability.") (internal quotation marks and citations omitted). Any complaints that Melendez should have received the tooth extraction whenever he demanded after January 8, 2008 are meritless. Id.

Fourth, to the extent that Melendez claims a less severe option could have been undertaken to alleviate his oral infection, such claims are also insufficient to allege a constitutional violation. At best, Melendez's claims that an alternative treatment, which he

12

fails to identify, would have generated a more favorable result is nothing more than a difference in opinion. Such differences in opinions do not support an Eighth Amendment allegation. Sonds, 151 F. Supp. 2d at 312. Furthermore, any such arguments are negated by the defendants' consensus in that the only available treatment option was extraction of the teeth. Therefore, the record clearly establishes that the medical treatment Melendez received complied with constitutional guarantees as it was appropriate, timely, and eliminates any plausible allegations that defendants were deliberately indifferent.

Accordingly, defendants' motion for judgment on the pleadings should be granted on this ground.

### E. Qualified Immunity

Defendants claim that even if Melendez's constitutional claims are substantiated, they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached concerning Melendez's claims because, as discussed supra, accepting all of Melendez's allegations as true, he has not shown that any of defendants violated his constitutional rights.

Accordingly, in the alternative, defendants' motion should be granted on this ground.

### III. Melendez's Motion to Amend

Rule 15(a) provides that a court should grant leave to amend "freely ... when justice so requires." When exercising its discretion, a court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the moving party. Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 46 (2d Cir. 1983) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). A court must also examine whether there will be prejudice to the opposing party. See, e.g., Ansam Associates Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir.1985) (permitting proposed amendment would be especially prejudicial once discovery has been completed and a summary judgment motion filed). Finally, where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to deny leave to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)(citations omitted).

In this case, granting Melendez's request to add the Commissioner of DOCS and the

Superintendents of the five correctional facilities at which he was housed would be futile because, as discussed supra, Melendez cannot establish that his constitutional rights were violated.[8]  Additionally, the amendment would be futile because Melendez has failed to establish their personal involvement in the present action. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

---

[8] Melendez cites to N.Y. Correct. Law §§ 112 and 137(6)(c) in his memorandum of law (Dkt. No. 48-1 at 1), though not in the submitted amended complaint, to contend that proposed defendants failed to follow state law.  Even liberally construing his submissions to include these claims results in untenable contentions.  First, "[a] violation of state law neither gives [Melendez] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."  Doe v. Conn. Dept. of Child & Youth Servs., 911 F.2d 868, 869 (2d Cir. 1990) (internal quotation marks and citations omitted); see also Patterson v. Coughlin, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . . ."); Rivera v. Wohlrab, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements of procedural due process.") (internal quotation marks and citations omitted).  Second, "[a]mple precedent establishes that a state rule of criminal procedure . . . does not create a liberty interest that is entitled to protection under the federal Constitution," as procedural rights are designed to "protect a substantive interest to which the individual has a legitimate claim of entitlement."  Watson v. City of New York, 92 F.3d 31, 37-38 (2d Cir.1996) (citations omitted). The policy underlying the state mandate, to have medical personnel check in with prisoners in isolation, is clearly to guarantee adequate medical care.  See N.Y. Correct. Law § 137(c) (directing superintendent to work with the facility medical staff "to maintain the health of such inmate[s in insolation]."  As discussed supra, as Melendez has failed to allege an Eighth Amendment deprivation because he received appropriate medical care, he has also failed to allege that the substantive right protected by the state law procedural requirement has been violated.

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Melendez agrees that the proposed defendants cannot be joined based upon their supervisory roles or the theory of respondeat superior alone. Dkt. No. 48-1 at 2. Melendez claims that the defendants were somehow aware of the alleged constitutional violations through the filing of his grievances. Receiving grievances, without more, is insufficient to establish personal involvement as there exists no allegation that the proposed defendants took any action. See Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citations omitted) (finding personal involvement only where a supervisory official received, reviewed, and responded to a prisoner's complaint); Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability.") (citations omitted). Moreover, the complaint fails to allege facts sufficient to support the bald assertion that potential defendants failed to train dental

personnel in medical techniques and decision making skills.  Lastly, there are no allegations that potential defendants were grossly negligent.  Accordingly, it would be futile to allow the amendment because the proposed defendants were not personally involved and there were no constitutional violations which occurred.

Moreover, in the case of proposed amendments where new defendants are to be added, the Court must also look to Fed. R. Civ. P. 21.  Rule 21 states that a party may be added to an action "at any stage of the action and on such terms as are just."  Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable."  United States v. Commercial Bank of N.A., 31 F.R.D. 133, 135 (S.D.N.Y. 1962) (internal quotations omitted).  Addition of parties under Rule 21 is also guided by the same liberal standard as a motion to amend under Rule 15.  Fair Housing Dev. Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972).

Lastly, allowing an amendment to the damages requested will not change the substantive decision of the Court.  Thus, such proposed amendments cannot save the fatal defects in the complaint discussed above.

Accordingly, Melendez's motion to amend is denied.


### IV.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motions for judgment on the pleadings (Dkt. Nos. 26, 38) be **GRANTED** and that judgment be entered for all defendants on all claims; and

**IT IS ORDERED** that Melendez's motion to amend his complaint (Dkt. No. 45) is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 23, 2010
       Albany, New York

*David R. Homer*
United States Magistrate Judge